**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ALISON MCKINNON<br>4888 Whispering Creek Court<br>Maineville, OH 45039 | : <br> : <br> : <br> : | Case No.:<br><br>J._____ |
| Plaintiff, | : <br> : <br> : | |
| vs. | : <br> : | |
| L-3 COMMUNICATIONS CORP.<br>600 Third Avenue<br>New York, NY 10016 | : <br> : <br> : <br> : <br> : | **COMPLAINT WITH JURY DEMAND** |
| L-3 COMMUNICATIONS CINCINNATI<br>ELECTRONICS CORP.<br>7500 Innovation Way<br>Mason, OH 45040 | : <br> : <br> : <br> : <br> : | |
| Defendants. | : | |

Plaintiff Alison McKinnon, complaining of Defendants L-3 Communications Corp. and L-3 Communications Cincinnati Electronics Corp., states as follows:

**PARTIES**

1) Plaintiff Alison McKinnon ("Plaintiff") is a resident and citizen of the State of Ohio.

2) Defendants L-3 Communications Cincinnati Electronics Corp. ("L-3" or "Defendant" or "L-3 Cincinnati") is an Ohio corporation located in and doing business in Ohio.

3) Defendants L-3 Communications Corp. ("L-3" or "Defendant") is the parent company of L-3 Communications Cincinnati Electronics Corp. and is a foreign corporation located in New York and doing business in Ohio.

4) Defendants are employers under federal and Ohio law.

1

**JURISDICTION AND VENUE**

5) This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331, because Plaintiff's Counts III and IV arise under the laws of the United States.

6) This Court has supplemental jurisdiction over the remaining Counts pursuant to 28 U.S.C. § 1367, because they arise out of the same set of operative facts as those relevant to Counts III and IV so as to make them part of the same case in controversy.

7) Venue is proper in the Southern District of Ohio, Western Division pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to these claims occurred in this district.

**FACTUAL ALLEGATIONS**

8) Plaintiff is female.

9) Plaintiff worked for Defendants from February 2012 in Cincinnati until it terminated her employment as L-3 Cincinnati's Senior Human Resources Director on February 23, 2016.

10) Defendants terminated Plaintiff immediately after she and her attorney informed the company that top level L-3 management was discriminating against her because of her gender and retaliating against her for alerting them to unlawful wage and billing practices and discrimination.

11) Plaintiff was a loyal and dedicated employee of Defendants and was fully qualified for her position at all times.

12) Plaintiff was the first female to serve in L-3 Cincinnati's senior leadership team, but her title at hire was lower than that of the male she replaced, and at termination she was her sector's only division-level human resources leader who was not a Vice President.

13) On information and belief, Plaintiff was paid significantly less than her male

counterparts and her male predecessor.

14) On information & belief, another L-3 female Human Resources leader not granted the Vice President title resigned in 2015 to escape pervasive gender discrimination in the company.

15) L-3 has a pattern of not recruiting, promoting, or retaining and forcing out or terminating female managers, and Plaintiff knew of at least three women in upper management who either were forced out or left the company to escape the anti-female culture.

16) Plaintiff's record of performance and accomplishment was excellent until she attempted to rectify legal issues falling within her responsibilities as well as personal discrimination and retaliation.

17) Plaintiff played a major role in 2013-2015 in enforcing the FLSA in L-3's Sonoma division by reclassifying workers as non-exempt, and these workers included L-3 Sector CFO Lou Park's administrative assistant. Plaintiff was continually hampered in her efforts by Park and other top managers, in part because Park did not want to pay his female assistant overtime.

18) Plaintiff's supervisor, L-3 Group Human Resources Vice President James Worsham, directly supports L-3 Group President Steve Kantor and was intimately involved in the reclassification process.

19) After Plaintiff presented the FLSA compliance plan to Park, Kantor and Sector President Jeff Miller, they stalled compliance until February 2015, and the employees in question remained unlawfully classified as exempt for at least six additional months. Plaintiff protested this delay.

20) Park criticized Plaintiff for advocating employees' reclassification with back pay

to Miller in a conference call, and Park suggested she needed to work on "relationship building" after the call.

21) Kantor arbitrarily overrode the decision to reclassify four employees with no apparent legal basis, and on information and belief, those employees remain improperly classified.

22) Miller and Park openly criticized Plaintiff in a meeting for starting a female mentoring program at L-3.

23) In late 2014, Plaintiff's female supervisor Andrea Krych was forced out of the company by Miller and Park, among others, and Plaintiff came under Park's supervision.

24) Shortly after Plaintiff brought the potential FLSA violations to light, L-3 management engineered a false ethics complaint against Plaintiff by an anonymous employee, and Plaintiff and members of her team were interviewed by Ethics Officer Carmen Pombiero as a result of the complaint.

25) Pombiero dismissed the complaints against Plaintiff, but in May 2015, an L-3 Human Resources Vice President close to Park, Roman Turchyn, deliberately attempted to sabotage Plaintiff's professional reputation and her relationship with two of her subordinates.

26) One of the subordinates complained about Turchyn's behavior to Plaintiff. Because Turchyn was an Ethics Officer, Plaintiff was obliged to report the complaint to Worsham for investigation.

27) Plaintiff was disturbed by Turchyn's sabotage and the continual discrimination and retaliation against her, so she called Worsham in May 2015 to discuss her subordinate's complaint and Plaintiff's increasingly hostile work environment and retaliation. Worsham became hostile and refused to review a written statement from the subordinate regarding

Turchyn's behavior.  Worsham took no action on Plaintiff's May 2015 complaint.

28) After Plaintiff's subordinate complained about Turchyn, an anonymous employee filed a false time-theft ethics complaint against the subordinate, which was dismissed.  Plaintiff's subordinate finally made a formal complaint in December 2015 to the ethics line, because Worsham never responded to her complaint via Plaintiff.

29) Less than two months after Plaintiff's May 2015 complaint to Worsham, Kantor loudly shouted at L-3 Cincinnati President Russell Walker, "When are you going to get rid of that problem?" while shoving his fingers into Walker's chest.  When Plaintiff asked Walker about this exchange, he advised her to look for another job.

30) Plaintiff followed up with Worsham in writing in late July 2015 and stated, "The bottom line is that I am being harassed, bullied, and I believe that it is based on my gender.  I am formally requesting that these complaints be investigated by an HR leader outside the ISS Sector."

31) Shortly after Plaintiff's written complaint, her August midyear review with Walker was suspended without explanation.

32) Worsham finally assigned Pombiero to investigate Plaintiff's complaints of discrimination and retaliation.

33) Plaintiff gave Pombiero a detailed written statement regarding retaliation against Plaintiff for her FLSA and other compliance efforts and the discriminatory "good old boys club" culture existing at L-3.

34) Pombiero spoke with a number of other female employees, including the female Human Resources Director who resigned, and she told Plaintiff in September 2015 that Plaintiff's complaint was being substantiated by the investigation.

5

35) Also in late 2015, Worsham rejected Plaintiff's recommendation to discipline or terminate an L-3 recruiter whom Plaintiff discovered had repeatedly changed and deleted EEO data to skew hiring statistics. This affirmative action information is required by and reportable to the OFCCP as part of L-3's government contractor requirements and Executive Order 11246.

36) The recruiter in question had been previously disciplined for making inappropriate race-based comments indicating she held racially biased hiring preferences.

37) Plaintiff raised the data fraud concerns to Pombiero during the investigation in October 2015 and requested corporate resources to investigate further, but Worsham blocked her request.

38) Plaintiff filed an ethics hotline complaint on November 22, 2015 reporting retaliation by, among others, Miller and Park for her FLSA compliance efforts and for alerting management to improper overbilling on Defendants' contracts with the U.S. government.

39) For these and other reasons, Plaintiff refused in October 2015 to sign L-3's quarterly Representations and Certifications letter, although Walker and L-3 Cincinnati s CFO David Monaco heavily pressured her to sign it.

40) In her ethics complaint, Plaintiff warned that Park and others were forcing Walker to downgrade his review of her 2015 performance, reduce her compensation, and terminate her employment. Plaintiff also informed ethics that she had complained to Worsham about harassment and retaliation with no result.

41) No one ever followed up with Plaintiff on her ethics complaint, except to confirm receipt.

42) Immediately after Plaintiff's ethics complaint, Plaintiff was excluded from information and communications that impacted her ability to perform her job, including whether

6

to select the recruiter who falsified EEO data for a reduction in force. Plaintiff attempted to discuss human resources matters with Park and other management multiple times, but they refused to engage.

43) Plaintiff retained counsel because her complaints were ignored and she feared for her job. On February 1, 2016, Plaintiff's counsel sent a letter to L-3's Assistant General Counsel Fagie Hartman informing L-3 that Plaintiff was being unlawfully retaliated against in violation of anti-discrimination laws, federal contractor EEO requirements, and the FLSA.

44) Immediately after the letter, Defendants' top management downgraded Walker's performance results rating for Plaintiff in L-3's performance compensation system, grossly reduced her bonus, and withdrew an offer of stock without notice or explanation.

45) Worsham became even more hostile towards Plaintiff and suddenly concluded his "investigation" of Plaintiff's concerns without actually investigating them.

46) On February 23, 2016, Defendants' in-house attorney, Stephen Wahl, terminated Plaintiff without explanation and referenced her retaining an attorney in the meeting.

47) Defendants engage in a pattern and practice of discrimination and unequal pay against women.

48) Defendants engage in a pattern and practice of retaliation.

## COUNT I

### (Gender Discrimination – O.R.C. Chapter 4112)

49) Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

50) Defendants discriminated against Plaintiff because she is female by treating and paying her less favorably than male employees, denying her compensation and opportunities for advancement, and terminating her employment, in violation Ohio Revised Code Chapter 4112.

7

51) Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

52) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injury and damage, and she is entitled to relief.

## COUNT II

### (Gender & Race Retaliation – O.R.C. Chapter 4112)

53) Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

54) Defendants retaliated against Plaintiff because she made protected complaints of gender and race discrimination by treating and paying her less favorably than employees who did not engage in protected activity, denying her compensation and opportunities for advancement, and terminating her employment, in violation Ohio Revised Code Chapter 4112.

55) Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

56) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injury and damage, and she is entitled to relief.

## COUNT III

### (FLSA Retaliation)

57) Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

58) Plaintiff complained of unlawful wage practices under the FLSA.

59) Defendants retaliated against Plaintiff because she made protected complaints of unlawful wage practices by treating and paying her less favorably than employees who did not engage in protected activity, denying her compensation and opportunities for advancement, and terminating her employment, in violation of the FLSA.

60) Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

61) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injury and damage, and she is entitled to relief.

## COUNT IV

### (False Claims Act ("FCA") Retaliation)

62) Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

63) Plaintiff investigated, reported and sought to stop Defendants from engaging in practices which defraud the United States government.

64) Defendants retaliated against Plaintiff because she engaged in activity protected by the FCA by treating and paying her less favorably than employees who did not engage in protected activity, denying her compensation and opportunities for advancement, and terminating her employment, in violation of the FCA.

65) Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

66) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injury and damage, and she is entitled to relief.

## COUNT V

### (Whistleblower Violation - O.R.C. § 4113.52(B))

67) Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

68) Defendants took retaliatory action against Plaintiff for reporting violations of state and federal statute.

69) Defendants' above-described actions violate Ohio's Whistleblower statute.

70) Defendant's actions were willful, wanton and malicious in nature

71) As a direct result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages and is entitled to judgment.

## COUNT VI

### (Retaliation in Violation of Public Policy)

72) Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

73) There are clear public policies expressed in Ohio law which prohibit employers from retaliating against an employee for raising reasonable concerns of false EEO reporting, fraud on the government, and for seeking legal counsel.

74) Retaliating against an employee for raising such reasonable concerns and seeking counsel would jeopardize these clearly established public policies.

75) Defendants retaliated against Plaintiff for raising such reasonable concerns and seeking counsel by denying her compensation and terminating her employment.

76) Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

77) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injury and damage, and she is entitled to relief.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) That Plaintiff be reinstated to her employment;

(b) That Defendants be enjoined from further unlawful activity;

(c) That Plaintiff be awarded all lost pay and benefits, including front pay;

(d) That Plaintiff be awarded compensatory damages;

(e) That Plaintiff be awarded liquidated damages;

      (f)      That Plaintiff be awarded punitive damages;

      (g)      That Plaintiff be awarded reasonable attorneys' fees and costs;

      (h)      That Plaintiff be awarded pre- and post-judgment interest;

      (i)      That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than her compensation over several, separate tax years; and

      (j)      That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

      Respectfully submitted,

/s/ Elizabeth S. Loring\
Elizabeth S. Loring (OH No.0076542)\
LORING LAW OFFICE, LLC\
9545 Kenwood Rd., Suite 301\
Phone: (513) 545-6781/Fax: (513) 561-6781\
eloringlaw@gmail.com\
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

      /s/ Elizabeth S. Loring